1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SARKIS KRIKOR and TALAR KEVORKIAN KRIKOR,

　　　　　　　　　Plaintiffs,

　　　v.

THE SPORTS MALL, LLC,

　　　　　　　　　Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 22-5600-DMG (MRWx)

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT [28, 30]**

　　　This action is before the Court on the parties' cross-motions for summary judgment ("MSJs").  [Doc. ## 28 ("DMSJ"), 30 ("PMSJ").]

　　　Defendant The Sports Mall, LLC ("Sports Mall") seeks summary judgment on Counts II and III of the Second Amended Complaint ("SAC") in *Kevorkian v. The Sports Mall LLC, et al.*, No. CV 21-2747-DMG (MRWx) ("*Kevorkian* Action"), which was consolidated with this case on November 9, 2022.  *Kevorkian* Action, Doc. ## 35, 78.  Plaintiff Sarkis Krikor ("Krikor") also filed a motion for summary judgment on his copyright infringement claim.[1]

---

[1] In support of Krikor's MSJ and Kevorkian's Opposition to Sports Mall's MSJ, Plaintiffs filed Requests for Judicial Notice ("RJN") of two declarations of Aaron Behar that had previously been filed

Both Motions are fully briefed.  [Doc. # 32 ("PSMJ Opp."), 35 ("DMSJ Opp."), 38 ("DMSJ Reply"), 41 ("PMSJ Reply").]  The Court held a hearing on these Motions on January 20, 2023.

For the foregoing reasons, the Court **GRANTS** Sports Mall's DMSJ and **DENIES in part and GRANTS in part** Krikor's PMSJ.

# I.
# BACKGROUND[2]

This case arises from Sports Mall's use of photographs of sports memorabilia on its website, which were taken by Krikor and advertised on websites owned by his sister and business associate, Talar Kevorkian Krikor ("Kevorkian").  Plaintiffs allege that Sports Mall's use of those photographs was unauthorized and unlawful, and assert claims against Sports Mall for copyright infringement, violations of California's Unfair Competition Law ("UCL"), California Business and Professional Code section 17200 *et seq.* ("Count II"), and false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a) ("Count III").  DMSJ at 9; PMSJ at 12–13.[3]

---

in this case.  [Doc. ## 31, 35-27.]  Since the Court did not rely on either declaration in this Order, both RJNs are **DENIED as moot.**

[2] Except where otherwise indicated, facts are undisputed and drawn from Sports Mall's Statement of Undisputed Facts ("DSUF"), as set forth with Krikor's responses in his DMSJ Opp. [Doc. # 36 (DSUF 1–21)], and Krikor's Statement of Undisputed Facts ("PSUF"), as set forth with Sports Mall's responses in its PSMJ Opp. [Doc. # 33 (PSUF 1–14)].  The Reply Statements contain the parties' responses and sur-responses, which are incorporated in the Court's citations.  [Doc. ## 39 (PSUF 15–66), 42 (DSUF 22–65).]  When purportedly disputed facts are not in fact controverted by the evidence, the Court cites to them as uncontroverted facts.  The Court has reviewed all the parties' evidentiary objections.  [Doc. ## 34, 37, 40, 43.]  To the extent the Court does not address any of them, it is because the Court did not rely on the objected-to evidence in reaching its ruling.  Any objections to such evidence are **OVERRULED as moot.**

[3] All citations to page numbers herein refer to those inserted by the CM/ECF system.

## A.     SportsCollectibles.com's Business Model

Sports Mall is a limited liability company that owns, manages, and operates the website http://www.SportsCollectibles.com.   DSUF 2.   SportsCollectibles.com is an online store that advertises and sells sports memorabilia.  DSUF 3.  At the time of the events that gave rise to this litigation, Sports Mall used an automated process that "crawled" the internet seeking sports memorabilia for sale by third-party sellers, and advertised some of those listings, including the accompanying images, for sale on its website.[4]  PSUF 2; DSUF 44.  Sports Mall advertises items as "in stock" when either (1) it has an item available in its own inventory or (2) the item is in the inventory of a third-party source from which Sports Mall can purchase and either ship or have the item "drop-shipped" to fill an order.  DSUF 4.  "Drop-shipping" is a "common retail strategy" used by Sports Mall, by which it transfers orders to a third party who ships the product, allowing it to sell products without the expense of managing and storing product inventories.  Decl. of Aaron Behar ISO Sports Mall's DMSJ ¶ 10 [Doc. # 28-6 ("Dec. 2 Behar Decl.")].[5]   Sometimes Sports Mall deals directly with athletes and agents at signings, but sometimes it buys items from eBay vendors and resells them.  DSUF 47.  Sports Mall claims that whenever it purchases items from other, third-party vendors of

---

[4] The record reflects that as of December 2022, Sports Mall had changed its automated process for posting listings on SportsCollectibles.com.  DSUF 57.  The Court did not find any place in the record that indicated exactly when it changed, but at the hearing Sports Mall's counsel stated that the change occurred approximately within the last year or so.

[5] Several declarants in this case submitted multiple declarations in support of their respective side's briefing on these cross-MSJs.  To avoid confusion, the Court will note the date that each declaration was signed in the short cite used to refer to that declaration.  The December 2 Behar Declaration appears twice in the record in identical form, both at Doc. ## 28-6 and 32-2.

Plaintiffs object to this paragraph as giving improper lay opinion testimony and for lack of foundation.  Since Behar provides his significant industry experience as the basis of this statement, the Court **OVERRULES** those objections.  *See* Pls.' Objs. To Decl. of Aaron Behar ISO DMSJ at 4 [Doc. # 37 ("Pls.' Objs. to Behar Decl.")].

sports memorabilia, it requires certificates of authenticity or has items authenticated by third party service providers.  Dec. 2 Behar Decl. ¶¶ 16–17.[6]

On its website, Sports Mall has a list of frequently asked questions, including one that reads "Why can I, when searching, find the same item for a lower price on eBay?" and the answer states:

> You might find the same item or one very similar for various reasons.  Most of our leading competitors buy their collectibles in bulk and resell them on their site.  SportsCollectibles.com deals directly with the athletes at signings along with their agents and our highly reputable vendors, therefore our products are 100% authentic.  We would never sacrifice the quality or authenticity of your collectible for a lower price.  Anyone can sell their items on eBay, so unless you personally know the vendor you should be cautious when purchasing.

DSUF 6.

Another FAQ question is "How do I know that what I am purchasing is authentic?"  Yacoubian Decl. ISO DMSJ Opp. ("Dec. 30 Yacoubian Decl."), Ex. B [Doc. # 35-19].  Sports Mall's website states:

> SC does not purchase autographed sports memorabilia from private collectors.  We do this for your protection.  We do not take a chance in purchasing from individuals that we do not know as we want to be able to guarantee our products 110%.  All our products come direct from a private session with the athlete in which a reputable company (such as Steiner, Upper Deck, APE, Real Deal, etc.) was present. . . . We will not purchase any of these items as we only deal direct [sic] with the authenticator.

*Id.* at 2.

**B.     SportsCollectibles.com's Listings of Plaintiffs' Items**

Kevorkian advertises and sells sports memorabilia, collectibles and other items through several online eBay stores, including three named "kconlinestore,"

---

[6] Plaintiffs object to this paragraph on relevance.  *See* Pls.' Objs. to Behar Decl. at 7.  As this statement relates to the basis for Sports Mall's claims of authenticity, the Court **OVERRULES** this objection.

"cardsandcoffee1," and "cardsandstuff15."   DSUF 1; PSUF 15; Decl. of Talar Kevorkian Krikor in Support of ("ISO") DMSJ Opp. ¶ 2 [Doc. # 35-1 ("Dec. 30 Kevorkian Decl.")].  Kevorkian's eBay stores are her sole source of income.  DSUF 55.  Krikor helps Kevorkian with the business in various ways.  PSUF 18.

In August 2020, Plaintiffs allegedly discovered that Sports Mall advertised more than six images of sports memorabilia items that were on display in one of Kevorkian's eBay web business stores.  PSUF 22.  Kevorkian knew they were the same items because Sports Mall included the serial numbers of these items and the images were photographed by Krikor.  PSUF 23.  SportsCollectibles.com advertised the items as "in stock," but listed them at a higher price than they were listed for in Kevorkian's stores.  PSUF 24, 25.

On September 11, 2020, Talin Yacoubian sent Sports Mall a letter alleging violation of federal copyright law and deceptive business practices on SportsCollectibles.com stemming from its use of certain photos from Kevorkian's eBay store.  PSUF 10; Decl. of Talin V. Yacoubian ISO PMSJ ("Dec. 2 Yacoubian Decl."), Ex. A ("Sept. 2020 Demand Letter") at 2 [Doc. # 30-11].  The September 2020 Demand Letter requested that Sports Mall remove six images from its website, including:  (1) an autographed photograph of Ousmane Dembele, FC Barcelona; (2) a basketball autographed by Giannis Antetokounmpo, Milwaukee Bucks; (3) an autographed poster of Rashard Lewis, Washington Wizards; (4) an autographed photo of Stanley Johnson, Detroit Pistons; (5) a football autographed by Vinny Testaverde, New York Jets; and (6) an autographed custom Ronaldinho jersey.  *Id.* at 4–15.

The parties dispute whether Sports Mall temporarily removed the six images, but by October 2020, two remained posted or had been reposted, along with several new ones from Kevorkian's store.  DSUF 50; Dec. 2 Yacoubian Decl. ¶ 3.  Yacoubian sent Sports Mall an additional letter asking it to cease all unauthorized use of "kconlinestore's work" on its site and remove at least three new items that had appeared on the site.  Dec. 2 Yacoubian Decl., Ex. B ("Oct. 2020 Demand Letter") [Doc. # 30-12.]

Neither of these letters indicate that kconlinestore was owned by Plaintiffs, nor the other stores owned by Kevorkian, and Sports Mall alleges it would have blocked its web crawling application from those websites if it had known they were connected to kconlinestore.  DSUF 54.  The "About" page for "kconlinestore" does not list any of Kevorkian's related eBay stores.  DSUF 62.

**C.   The Pele and Ronaldo Jerseys**

On February 22, 2021, Kevorkian posted photographs taken by Krikor that depicted two soccer jerseys autographed by famous athletes Pele ("Pele Jersey") and Ronaldo ("Ronaldo Jersey") (collectively, the "Jersey Photos"), advertised as valuable collectibles for sale in her store.  PSUF 7; Dec. 30 Kevorkian Decl., Ex. A (Ronaldo Jersey and Pele Jersey listings) [Doc. # 35-2 ("Original eBay Listings")].   Soon thereafter, she noticed that the same jerseys were advertised on SportsCollectibles.com. Dec. 30 Kevorkian Decl., Ex. B [Doc. # 35-3].   She did not authorize SportsCollectibles.com to advertise these items.  Dec. 30 Kevorkian Decl. ¶ 13.

In March 2021, Krikor obtained a copyright registration for both Jersey Photos. PSUF 7.  The registration is listed under No. CA 2-240-903 with an effective date of March 8, 2021.  PMSJ, Ex. A (U.S. Copyright Office Certificate of Registration No. VA-2-240-903) at 2 [Doc. # 30-5 ("Copyright Registration").]

Kevorkian claims that when she acquired the Pele Jersey and Ronaldo Jersey, "they carried with them authentication numbers from well known [sic] authentication companies."  Decl. of Talar Kevorkian Krikor ISO PMSJ ¶ 2 [Doc. # 30-3 ("Dec. 2 Kevorkian Decl.")].   The Ronaldo Jersey Photos depict a "Beckett Certificate of Authenticity," attesting that "the signature(s) on this item were personally witnessed by a representative of Beckett Authentication Services," and listing a "Certification Serial Number" that a consumer can use to verify the authentication on Beckett's website. Copyright Registration at 5.   This Certificate is visible in the original listing on Kevorkian's eBay store.  *See* Original eBay Listings.  The Pele Jersey Photos do not

depict any such certificate of authenticity, and the listing accordingly does not contain an image of one. *See* Copyright Registration at 12–17; Original eBay Listings.

Soon after posting the listings, SportsCollectibles.com posted ads for jerseys that appeared to be the same Pele Jersey and Ronaldo Jersey, including apparently identical images of each. Dec. 30 Kevorkian Decl. ¶ 12; *id.*, Ex. B [Doc. # 35-3.]

**D.    The Ousmane Dembele Jersey**

In December 2020, Kevorkian listed an autographed Ousmane Dembele French National Team jersey for sale for $169. PSUF 45. Sometime in March 2021, a man named Erbeck Engili, a family friend of Kevorkian's, saw the listing on one of her sites and became interested in purchasing it. PSUF 46; Erbek Engili Decl. ISO DMSJ Opp. ¶ 7 [Doc. # 35-15 ("Engili Decl.")].[7] Prior to purchasing it, Engili conducted an internet search for the item and saw that the same item was listed on SportsCollectibles.com. PSUF 47. He then bought the item from SportsCollectibles.com, although he later cancelled his order. PSUF 48. He did not purchase the item from Kevorkian because he was not sure of its authenticity. PSUF 49. The item remains unsold as of December 2022. PSUF 50.

**E.    Procedural History**

On March 3, 2021, Kevorkian filed a lawsuit against Sports Mall for copyright infringement related to these events. *See* Compl., *Kevorkian* Action, Doc. # 1. At the time, Krikor and Kevorkian both mistakenly believed that Krikor had assigned all rights to the registered copyrights to Kevorkian. Ord. re Def.'s Mot. to Dismiss; Pl.'s Mot. to Modify Scheduling Ord. at 1–2, *Kevorkian* Action, Doc. # 53. After unsuccessfully trying to reassign the rights to Kevorkian, she tried to add Krikor as a party to her lawsuit. *Id.* at 8. The Court denied that motion for procedural reasons. *Id.* Accordingly, Krikor filed the instant copyright infringement suit. *See* Compl. Pursuant

---

[7] An apparently identical copy of the Engili Declaration also was filed in support of Krikor's MSJ. [Doc. # 30-13.]

to Plaintiffs' motion, the Court consolidated the two cases on November 9, 2022.  [Doc. # 24.]

## II.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").  "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Id.*

## III.
## DISCUSSION

### A.   **Sports Mall's MSJ**

Sports Mall seeks dismissal of all of Kevorkian's remaining claims:  Count II, for unfair competition in violation of the UCL, and Count III, for false advertising in violation of the Lanham Act.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  It covers "anything that can properly be called a business practice and that at the same time is forbidden by law" and "governs 'anti-competitive business practices' as well as injuries to consumers." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation and citations omitted).  Section 17200 borrows violations of other laws, including federal laws, and treats them as unlawful practices that the unfair competition law makes independently actionable.  *Id.*; *Rose v. Bank of America, N.A.*, 57 Cal. 4th 390, 394 (2013).  To prevail on a UCL claim, a plaintiff must prove by a preponderance of the evidence that the defendant engaged in such an act.  *See People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 721, 732 (2002) (citation omitted).

The elements of a false advertising claim under Section 43(a)(1)(B) of the Lanham Act are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (2012) (citing 15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

The Ninth Circuit "has consistently held" that state law unfair competition claims "are substantially congruent" to claims made under the Lanham Act when both claims allege the same conduct.  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (quoting *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citations omitted)).  Accordingly, the Court will address these claims together.

**1.  False or Misleading Statements**

For a statement to constitute false advertising, it need not be a "literal falsehood." *Southland Sod Farms*, 108 F.3d at 1139; *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).  Instead, Plaintiffs may win false advertising claims by proving that the statements were false by implication or innuendo.  *Id.*; *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020).  The Court will separately examine each of Sports Mall's statements that Kevorkian alleges is false or misleading.

**a.  "In Stock"**

Plaintiff argues that it is false or misleading for Sports Mall to represent that certain items are "in stock" on SportsCollectibles.com when those items are actually held and sold by third-party sellers.  DMSJ Opp. at 13.  In its MSJ, Sports Mall argues that it does not, by advertising an item as "in stock," represent or imply that it owns or possesses the item.  DMSJ at 15–16.  Instead, it is representing that it has the item available for sale, regardless of the item's current custodian.  *Id.* at 16.  The practice of listing an item "in stock" but contracting with a third-party seller to actually ship the item is known as "drop shipping," which Sports Mall alleges is a common industry practice.  Dec. 2 Behar Decl. ¶¶ 8–10;[8] DMSJ at 15.

This statement is not literally false, but it may be misleading.  Kevorkian provides dictionary definitions of "in stock," but that evidence does not necessarily support their position that "in stock" always means that the goods are in the possession of a retailer, rather than merely available "for immediate sale" or "available for sale or use."  Dec. 30 Yacoubian Decl., Ex. C ("Oxford Languages 'In stock' Definition") [Doc. # 35-20]; *id.*, Ex. D ("Collins Dictionary 'In stock' Definition") [Doc. # 35-21].    The Collins

---

[8] Plaintiffs object to paragraph 8 for lack of foundation and restate their objection to paragraph 10.  The Court **OVERRULES** these objections.  *See supra* note 5.

Dictionary does provide some evidence that "in stock," in the retail context, often means that the retailer has the item in a store or warehouse.

Plaintiff's evidence creates a genuine dispute of material fact as to whether the statement is misleading in that context. "Drop shipping" may be a common industry practice used by retail giants such as Amazon, but that does not mean that SportsCollectible.com's use of "in stock" does not tend to mislead consumers to believe it literally possesses the item, especially given its assurances regarding its process for ensuring authenticity. Defendant's MSJ is **DENIED** on whether advertising items sold by third-party sellers as "in stock" is misleading.

### b. "Why can I, when searching, find the same item for a lower price on eBay?"

The Court previously concluded that this statement was misleading in context, because it "implies that the eBay sellers of 'the same' merchandise are inauthentic, when in fact, those are the very sellers from which Sports Mall sources at least some of its '100% authentic' products." Ord. re Sports Mall's Motion to Dismiss Pl.'s First Am. Compl. at 7, *Kevorkian* Action, Doc. # 34. The Court's prior Order left open the possibility that Sports Mall could produce evidence that the statement refers to unrelated third-party eBay sellers with inauthentic items that are not the actual ones that Sports Mall sells, but the Court does not see any such evidence in the record. *See id.* Its analysis therefore remains unchanged, and Sports Mall's MSJ is **DENIED** on whether this statement is misleading.

### c. "All our products come direct from a private session with the athlete in which a reputable company. . . was present. We will not purchase any of these items as we only deal direct [sic] with the authenticator"

This statement, while not initially raised by Sports Mall in its MSJ, is fairly included within the ambit of Kevorkian's allegations relating to Count II in her SAC. PSUF 64; SAC ¶ 55, *Kevorkian* Action ("falsely misrepresented to consumers that it

deals directly with athlete at signings along with their agents"). Notwithstanding Kevorkian's arguments to the contrary, this statement is not literally false, even if it can be misleading. Sports Mall's statement that "all our products come direct from a private session with the athlete in which a reputable company . . . was present" does not mean that Sports Mall itself is present at these signings, but rather that it verifies the certificates of authenticity of its products. Put differently, Sports Mall will not purchase items without "deal[ing] directly with the authenticator" to verify that they were, in fact, signed in a private session with the athlete in which a reputable company was present. *See* DSUF 45–46.

Further, the record is replete with evidence that Sports Mall makes all reasonable efforts to ensure that its products are authenticated in the manner described in this statement. DMSJ Reply at 20–21; Dec. 2 Behar Decl. ¶¶ 15–21.[9] The Court's analysis would be different if Sports Mall made a statement that it was present at the signings itself, rather than representing that it purchases items from individual sellers only when they are properly authenticated. Indeed, Plaintiff advertises her own merchandise with the same guarantees of authenticity as the items on SportsCollectibles.com, *e.g.*, researching and ensuring that the items have certificates of authenticity, and the certificate is legitimate. Dec. 30 Kevorkian Decl. ¶ 3. She only identifies one item ever sold on SportsCollectibles.com that turned out to be inauthentic. *Id.* ¶ 10.

There is no indication—beyond Plaintiffs' conclusory, argumentative "undisputed facts" and responses—that Sports Mall's statements have led any consumers to believe that Sports Mall or its agents personally knows all their vendors and/or has a company representative present at all sessions with the athletes. Nor is there any statement made

---

[9] Plaintiffs object to paragraphs 16, 18, and 20 for giving improper lay opinion testimony, relevance, stating legal conclusion, lack of foundation, and hearsay. The Court **OVERRULES** Objection Nos. 8, 10, and 11 as moot because it did not rely on the quoted statements. Objection 9 is **OVERRULED** because the statement is highly relevant to the claims of this case. *See* Pls.' Objs. to Behar Decl. at 7–8.

in the context of a specific item which falsely implies or states that Sports Mall personally obtained said item from a known individual. *See Newcal Industries, Inc. v. Ikon Off. Sol'n*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact . . . .") (internal quotation omitted).

The certificates of authenticity (on which Plaintiff also relies) may be verified directly with the company that provided the authentication. *See* Copyright Registration at 5. But in the context of the website, the claim that "we only deal direct [sic] with the authenticator" could plausibly mislead a consumer to believe that Sports Mall never sells items obtained by third-party sellers, which is untrue. DMSJ Opp. at 14–15 (citing, *inter alia, Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 245). Additionally, it is not abundantly clear whether Sports Mall is distinguishing between products it directly purchases and holds in its own inventory versus products it advertises and sells through other vendors. Sports Mall's MSJ is therefore **DENIED** on the issue of whether this statement is misleading.

### 2. Deception of the Public

In a false advertising claim based on misleading statements that are not literally false, courts require plaintiffs to present "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients" at the summary judgment stage or at trial.[10] *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635–36 (N.D. Cal. 2019) (quoting *William H. Morris Co. v. Grp. W. Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)).

---

[10] At the hearing, Plaintiffs' counsel cited *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir. 1986), in support of an argument stated that it is Sports Mall's burden to rebut a presumption of consumer deception. The test applies, however, when (as in *U-Haul Intern., Inc.* itself) the court has concluded that the statements at issue were literally false. Here, the Court's conclusion is that Sports Mall's statements were misleading, but not literally false, so the *U-Haul* presumption does not apply.

1    It is here that Kevorkian's claim fails.  Kevorkian only provides evidence of a

2   single person—a family friend—who may have been deceived by Sports Mall's

3   advertising, and even that one person's testimony falls short of supporting that claim.

4   Her own interrogatory responses and deposition testimony admit that she is not aware of

5   a single other person who had been mislead by any of Sports Mall's statements.  *See*

6   Decl. of J. Todd Timmerman ISO DMSJ, Ex. 2 (Kevorkian's Responses to Sports Mall's

7   Interrogatories Nos. 11 and 12) at 5–6 [Doc. # 28-3]; *id.*, Ex. 3 (Kevorkian's Responses

8   to Sports Mall's Interrogatory No. 7) at 5 [Doc. # 28-4]; *id.*, Ex. 4 (excerpts from

9   deposition transcript of Kevorkian) at 7–8, 10–11, 11–13, 14–15, 16, 19, 30 [Doc. # 28-

10  5].  Even her one piece of direct evidence on this point, Engili's declaration itself, does

11  not say explicitly that Sports Mall's statements deceived him into concluding that Sports

12  Mall had the real item and Kevorkian was selling a replica.  DMSJ Reply at 9.  He

13  merely states that he "couldn't understand how the exact same item could be in two

14  different places" and "I did not feel right about the decision" to buy from

15  SportsCollectibles.com, and that he "just wasn't sure of [the item's] authenticity."

16  Engili Decl. ¶¶ 4–6.

17    This evidence is insufficient under Ninth Circuit law.  *See, e.g.*, *ITEX Corp. v.*

18  *Global Links Corp.*, 90 F. Supp. 3d 1158, 1171–72 (D. Nev. 2015) (where statements are

19  misleading and not literally false, plaintiff has burden to show widespread deception of

20  the consuming public); *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119,

21  1131 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566

22  (9th Cir. 2004) (finding that testimony of "two of 300 recipients" containing "mostly

23  conclusory statements" was insufficient to establish a claim for fraudulent conduct in the

24  preliminary injunction context).  California state courts also import this standard when

25  analyzing UCL claims.  *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003).

26    In short, Plaintiff has not identified any evidence that might lead a reasonable

27  factfinder to conclude that any of Sports Mall's potentially misleading statements caused

28

"a significant portion of the recipients" to be deceived or misled by the statements.  For this reason, Sports Mall's MSJ is **GRANTED** on Claims II and III of Kevorkian's SAC.

**B.    Krikor's MSJ**

**1.    Originality of Photos**

Krikor seeks summary judgment on his Copyright Act claim for Sports Mall's use of the Jersey Photos.  PMSJ at 5.  To prevail on a copyright infringement claim, a plaintiff must show:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).  It is undisputed that Sports Mall copied the Jersey Photos, so the question is only whether Krikor's copyright is valid.  *See* PSUF 9.

Since Krikor obtained a copyright registration certificate for the two images, federal copyright law entitles him to a rebuttable presumption of originality with respect to the photos.  *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997); 17 U.S.C. § 410(c).  To rebut this presumption, Sports Mall must offer some evidence or proof to deny Krikor's *prima facie* case of infringement.  *Id.*

Sports Mall's first argument is that Krikor's copyright registration is not valid because the Jersey Photos lack originality.  For a copyright registration to be valid, a work must be original to the author.  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547–48 (1985).  Under copyright law, "originality" means that the work was "independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Feist Publ'ns, Inc.*, 499 U.S. at 345 (citation omitted).  "The requisite level of creativity is extremely low; even a slight amount will suffice."  *Id.*  There is no dispute over whether Krikor created the Jersey Photos, so the Court must decide whether they possess that minimal degree of creativity.

When determining whether a photograph is "original," courts in the Ninth Circuit analyze the creative decisions involved in producing a photo to determine whether it is

sufficiently original, such as whether the photo has "'carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective . . . .'" *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992) (quoting *United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978)).   A photograph "is no less a subject of copyright protection because it is used to sell goods." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000) (quotation and citation omitted); *see also Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) ("Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd and therefore gives them a real use-if use means to increase trade and to help to make money.")

Here, Krikor has met his burden to satisfy the element of originality as a matter of law.   He submitted a declaration describing his intentional choices behind the lighting, composition, and framing of the photographs.   Suppl. Decl. of Sarkis Krikor ISO PMSJ Reply ¶¶ 6–10 [Doc. # 41-1].   His deposition testimony reflects the same.   *See* Suppl. Decl. of Talin V. Yacoubian ISO Krikor's PMSJ Reply, Ex. A (excerpts from deposition transcript of Krikor) at 4–10 [Doc. # 41-3 ("Krikor Depo. Tr.")].   Sports Mall's Opposition relies heavily on the *Oriental Art Printing, Inc.* case, but the record in that case contained almost no information about "how the photographs were taken, or how they were incorporated into the copyrighted design as a whole." *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 547 (S.D.N.Y. 2001); PMSJ Opp. at 19.   Its reliance on out-of-circuit precedent applying a less stringent standard than the one used in the Ninth Circuit is fatal to its argument.   *See* PMSJ Opp. at 12, 14 (citing *Bridgeman Art Library, Ltd. v. Copel Corp.*, 25 F. Supp. 2d 421 (S.D.N.Y. 1998); *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258 (10th Cir. 2008)).

It is true that "the photos are both direct, product-accurate depictions of the jerseys, and parts thereof, laid flat against a plain black background" and "are hardly the work of famous photographers like Richard Avedon, Diane Arbus, or Annie Liebovitz." PMSJ Opp. at 19; *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012).   But

the copyright laws do not protect only famous photographers.  Krikor has provided record evidence indicating that he made creative decisions in the arrangement and composition of the photos sufficient to meet the "minimal" degree of originality required in this circuit, and Sports Mall has not met its burden to prove otherwise.  *Ets-Hokin*, 225 F.3d at 1076.

### 2.    Fair Use

Next, Sports Mall argues that its use of the Jersey Photos constituted "fair use." PMSJ Opp. at 20.  The "fair use" of a copyrighted work is not an infringement of copyright.  17 U.S.C. § 107.  "[I]t is well established that a court can resolve the issue of fair use on a motion for summary judgment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (although the issue of fair use is a mixed question of law and fact, the court may resolve issues of fair use at the summary judgment stage where there are no genuine issues of material fact as to such issues).  Because fair use is an affirmative defense to infringement, the defendant bears the burden of proving fair use. *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1151 (C.D. Cal. 2010).

The Court considers the following factors in determining whether a use of a copyrighted work is fair:

> (1)    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)    the nature of the copyrighted work;
>
> (3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)    the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

//

### a. Purpose and Character of the Use

Sports Mall argues that its use of the Jersey Photos was fair because it was "transformative." PMSJ Opp. at 20 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 (9th Cir. 2007) ("The central purpose of this [factor] is to determine whether and to what extent the new work is transformative.") (quotation omitted)). It argues that its comparative size and business model to Kevorkian's eBay store means that its use of the photos does not "merely supersede[]" the original ones, but "adds something new, with a further purpose." *Perfect 10, Inc.*, 508 F.3d at 1164 (quotations omitted); PMSJ Opp. at 23. But its analogy to *Perfect 10, Inc.* is imperfect. That case emphasizes the difference between the use of the images as creative expression and Google's use of the images in its search results with the purpose of expanding access to the internet. *Perfect 10, Inc.*, 508 F.3d at 1165. By contrast, Sports Mall's use of the photographs is not "transformative," but merely "exact copying from Plaintiff's store to Defendant's store." PMSJ Reply at 15. This factor thus does not favor fair use.

### b. Nature of the Copyrighted Work

This factor addresses the extent to which the work is creative and whether it is unpublished. *Monge*, 688 F.3d at 1177. "Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." *Id.* (citing 17 U.S.C. § 102(a)(5)). These photographs were not created as artistic expressions, but rather "to truthfully advertise" the Jersey Photos. PMSJ Opp. at 25. Krikor allowed Kevorkian to publish the photos, so he did not lose his right of publication to Sports Mall. This factor does not favor either party.

### c. Amount and Substantiality of the Portion Used

The third fair use factor considers whether the amount and substantiality of the portion used is reasonable in relation to the purpose of the copying. *Wall Data v. Los Angeles Sheriff's Dep't*, 447 F.3d 769, 780 (9th Cir. 2006). "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d

1110, 1118 (9th Cir. 2000) (internal quotation marks and citation omitted). Sports Mall used the entirety of the Jersey Photos in its listings. This factor weighs against fair use.

### d. Effect on the Potential Market

The fourth factor concerns whether the new work serves as a market substitute for the original work or its derivatives. *Campbell v. Acruff Rose Music, Inc.*, 510 U.S. 569, 590 (1994). The Court must consider "not only the extent of market harm caused by the actions of the particular alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Id.* (internal quotation marks and alterations omitted).

Here, the Jersey Photos serve little use outside of the marketing of the Pele and Ronaldo Jerseys. PMSJ Opp. at 26. Currently, Krikor licenses the photos to Kevorkian for $100. DSUF 40. The market for the photos may be small, but Sports Mall is Plaintiffs' direct competitor, and its use of the photos helps it make a profit. The photos help Plaintiffs sell the depicted merchandise and it follows that any potential buyer might be less likely to buy the jerseys directly from Kevorkian's eBay store if the photos were copied everywhere. Krikor claims that he might charge from $1000 to $5000 per photo to other sellers who wanted to use them to advertise the jerseys for sale. DSUF 41. Regardless of whether that claim is credible, Sports Mall does not supply any contrary evidence about relevant markets that would negate the negative market effect of its infringement. *See Campbell*, 510 U.S. at 590. This factor weighs against Sports Mall.

In sum, Defendant has not demonstrated that its use of the Jersey Photos was fair.

### 3. Unclean Hands

The unclean hands defense is available in both legal and equitable actions. *Jade Fashion & Co. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635, 653 (2014). Whether the defense applies depends on "analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Id.* (citation omitted). The key

focus, however, is "the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue." *Id.* (citation omitted). The misconduct must relate directly to the cause at issue so that it would be inequitable to grant the relief requested. *See id.* at 654 (citations omitted).

Defendants preserve their unclean hands defense in their Answer, and raise it again in their Opposition to Krikor's MSJ. Ans. ¶ 35 [Doc. # 26]; PMSJ Opp. at 27–28. Defendants base their unclean hands defense on allegations that Plaintiffs "created and registered the copyrights in the two photos at issue and put them on [Kevorkian's] second eBay store (which was never mentioned to Sports Mall), intending only to trick Sports Mall into copying the photos in order sue Sports Mall." PMSJ Opp. at 28. They provide evidence that Kevorkian provided some inconsistent deposition testimony regarding the amount of eBay stores she owned, and that Krikor, who has licensed the Jersey Photos for $100/month, has expressed an interest in licensing them to Sports Mall for up to $5000/month. DSUF 18–20, 40–41, 56. The parties also dispute whether Sports Mall took down the disputed after the September 2020 Demand Letter, and Sports Mall claims that Plaintiffs subsequently reposted the photos on a different, undisclosed eBay store that would not be subject to the block on Sports Mall's "crawler." PMSJ Opp. at 27–28. Krikor does not provide rebuttal evidence, but merely argues that Kevorkian need not "ask permission" to open new eBay stores. PMSJ Reply at 19. Though slim, triable questions of fact remain as to whether this defense bars Krikor's infringement claim.

### 4. Willful Infringement

A defendant found liable for copyright infringement is liable for either actual damages or statutory damages. *See* 17 U.S.C. § 504(a). Statutory damages can range from $750 to $30,000 damages for all infringements, "as the court considers just." *Id.* § 504(c)(1). If a court finds infringement was committed willfully, the court has discretion to increase the statutory damages award beyond $30,000, to not more than $150,000. 17 U.S.C. § 504(c)(2). If the infringer proves that he "was not aware and had

no reason to believe that his or her acts constituted an infringement of copyright," the court has discretion to reduce the statutory damages to not less than $200.  17 U.S.C. § 504(c)(2).

"[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (alteration in original) (quoting *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)).  "[E]vidence that notice had been accorded to the alleged infringer . . . is perhaps the most persuasive evidence of willfulness." *Wash. Shoe*, 704 F.3d at 674 (quoting *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991)).  A determination as to willfulness generally requires "an assessment of a party's state of mind," a factual issue that is usually inappropriate for summary judgment. *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016).

Krikor moves for summary adjudication of the willfulness of Sports Mall's infringement.  PMSJ at 9–16.  But Sports Mall has introduced evidence that its infringement was not willful.  For example, it is uncontroverted that Sports Mall uses an algorithmic "crawler" to locate listings for its site, but it is unclear from the record how that "crawler" works, and how much Sports Mall monitors its listings and manages its "block list."  PSUF 2; PMSJ Opp. 27–28.

The parties even dispute whether Sports Mall took down the allegedly unlawful photographs referenced in the September 2020 Demand Letter, which would be probative of Sports Mall's "state of mind."  PSUF 11.  There are also material disputed facts about whether Sports Mall was aware or should have been aware of Kevorkian's additional eBay stores and blocked its "crawler" from those sites as well.  DSUF 54, 62.

In short, Sports Mall has established a dispute of material fact as to whether its infringement of Krikor's copyright was willful or that of an innocent infringer.  The Court therefore **DENIES** Krikor's MSJ as to Sports Mall's willfulness.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Sports Mall's MSJ and dismisses Kevorkian's claims under the UCL and the Lanham Act.  Krikor's PMSJ is **GRANTED** as to Sports Mall's infringement of its copyright of the Jersey Photos and **DENIED** as to the willfulness of Sports Mall's infringement and its unclean hands defense.

**IT IS SO ORDERED.**

DATED:  January 24, 2023

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE